```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF DELAWARE



KYMA CAPITAL LIMITED,   )
                        )
         Plaintiff,     )   C.A. No. 23-670-RGA-LDH
                        )
v.                      )
                        )
PJT PARTNERS, INC.,     )
                        )
         Defendant.     )




             Thursday, June 27, 2024
             1:00 p.m.
             Teleconference


             844 King Street
             Wilmington, Delaware




BEFORE:  THE HONORABLE LAURA D. HATCHER
    United States District Court Judge



APPEARANCES:

      HEYMAN, ENERIO, GATTUSO & HIRZEL, LLP
      BY:  JAMIE LYNN BROWN, ESQ.

      -and-

      PALLAS PARTNERS, LLP
      BY:  SHIREEN A. BARDAY, ESQ.

                      Counsel for the Petitioner
```

```
 1    APPEARANCES CONTINUED:

 2
             MORRIS, NICHaOLS, ARSHT & TUNNELL, LLP
 3           BY:  ANDREW R. REMMING, ESQ.
             BY:  JONATHAN M. WEYAND, ESQ.
 4
                        -and-
 5
             WILLKIE, FARR & GALLAGHER, LLP
 6           BY:  STUART R. LOMBARDI, ESQ.
             BY:  TODD G. COSENZA, ESQ.
 7           BY:  LAWRENCE SLUSKY, ESQ.
             BY:  ZEH S. EKONO, ESQ.
 8           BY:  COLIN LEE, ESQ.

 9                        Counsel for the Respondent

10
             ASHBY & GEDDES, P.A.
11           BY:  ANDREW C. MAYO, ESQ.

12           -and-

13           WHITE & CASE, LLP
             BY:  JACQUELINE L. CHUNG, ESQ.
14
                        Counsel for Intervenor
15

16                ----------------------------

17

18

13:03:48 19        THE COURT:  Good afternoon.  This is Laura

20    Hatcher.

21             Who is on the line for petitioners?

13:03:50 22        MS. BROWN:  Good afternoon, Your Honor.  This is

13:03:51 23    Jamie Brown of Heyman, Enerio, Gattuso & Herzel.  I'm joined

13:03:55 24    today by my colleague and co-counsel Shireen Barday of

13:04:01 25    Pallas Partners who has been admitted pro hac vice in this
```

13:04:05 1    matter.

13:04:06 2                    THE COURT:  Fantastic.  Good afternoon to both

13:04:07 3    of you.

13:04:09 4                    Who is on the line for the respondent, please?

13:04:12 5                    MR. REMMING:  Good afternoon, Your Honor.  This

13:04:13 6    is Andrew Remming from Morris Nichols.  I'm joined by my

13:04:17 7    colleague, Jonathan Weyand and my colleagues from Willkie,

13:04:23 8    Farr & Gallagher, Zeh Ekono, Todd Cosenza, Stuart Lombardi,

13:04:27 9    Lawrence Slusky and Colin Lee.  Ms. Ekono will handle the

13:04:31 10   presentation for the respondents today.

13:04:35 11                   THE COURT:  You said Ms. Ekono?

13:04:38 12                   MR. REMMING:  Yes.

13:04:39 13                   THE COURT:  Okay.  Fantastic.  Welcome to all of

13:04:41 14   you.

13:04:41 15                   And do we have anyone on the line for

13:04:43 16   intervenor?

13:04:44 17                   MR. MAYO:  Yes, we do, Your Honor.  Good

13:04:46 18   afternoon.  This is Andrew Mayo from Ashby & Geddes on

13:04:49 19   behalf of Orpea and I'm joined today by my co-counsel from

13:04:55 20   White & Case, Jacqueline Chung is on the line.

13:04:55 21                   THE COURT:  All right.  Fantastic.  Welcome.

13:04:57 22   Okay, folks.  Let's go ahead and jump right in.

13:05:05 23                   All right.  Petitioners, I modified the subpoena

13:05:27 24   during a teleconference to carve out documents from the

13:05:31 25   conciliation proceeding.  I made a ruling, no one asked for

13:05:32  1    reconsideration and/or asked to have the ruling modified in

13:05:35  2    any way.  The document at issue appears to be heavily

13:05:39  3    drafted and finalized during the conciliation proceeding.

13:05:42  4    As modified, how is your request still responsive under the

13:05:46  5    subpoena?

13:05:47  6              MS. BARDAY:  Sure, Your Honor.  This is Shireen

13:05:51  7    Barday.  Good afternoon.

13:05:51  8              THE COURT:  Good afternoon.

13:05:52  9              MS. BARDAY:  So fundamentally, I guess.  There

13:05:55 10    are a couple issues.  So we were not aware and it wasn't

13:05:58 11    raised until February that the engagement letter had been

13:06:02 12    executed during the second conciliation.  Our subpoena

13:06:07 13    specifically -- this isn't a case where you suggest that it

13:06:11 14    fit into a request.  We specifically asked for your

13:06:13 15    engagement letter.  Right?  So -- and we raised this issue

13:06:18 16    at the prior hearings in this matter, specifically noting

13:06:20 17    that we were seeking the engagement letter.  Right?

13:06:24 18    Procedurally there's nothing that precludes this court from

13:06:27 19    reconsidering its prior ruling or clarifying that it did not

13:06:32 20    intend to exclude the engagement letter because there was no

13:06:35 21    argument specifically on that point and there is nothing

13:06:38 22    procedurally that would prohibit us from filing a second

13:06:43 23    petition seeking the engagement letter.  We simply thought

13:06:46 24    this was the most efficient path forward for all the

13:06:49 25    parties.

13:06:50  1          THE COURT:  Okay.  Understood.  And I take and

13:06:54  2   appreciate your point that you didn't find out until

13:06:57  3   sometime later, but now you at least have a representation

13:07:01  4   from respondents that this document is subject to the

13:07:05  5   conciliation privilege for the reasons that they say, it was

13:07:09  6   drafted during the time period and all the other reasons.

13:07:13  7   If I were to allow you to now serve a new subpoena to try to

13:07:17  8   get this document specifically, which, as I said,

13:07:20  9   respondents say is privileged, doesn't that get us right

13:07:23 10   back to where we were before in my prior ruling; that is,

13:07:28 11   you'll move to enforce, the respondents will oppose and then

13:07:31 12   we're back to arguing about the merits of a foreign

13:07:35 13   jurisdiction's privilege log, right?

13:07:38 14          MS. BARDAY:  So I'm not sure that that's right,

13:07:40 15   Your Honor.  So we served a subpoena, they served their

13:07:43 16   objections.  The subpoena served still requests the

13:07:47 17   engagement letter.

13:07:48 18          THE COURT:  Yes, but there's a carve out of

13:07:49 19   documents creating during the conciliation, which they say

13:07:53 20   this is.

13:07:54 21          MS. BARDAY:  Sure.  So I'm happy to address the

13:07:57 22   issue of -- so I don't think it gets us there for a couple

13:08:01 23   of reasons.  The first is, you know, our expert has said

13:08:04 24   this engagement letter is not covered by conciliation

13:08:07 25   confidentiality.  Right?  So at most you have here a battle

13:08:11  1    of the experts and the well-settled case law says, in the

13:08:13  2    event of a battle of the experts, a U.S. court should not

13:08:17  3    weigh into questions of foreign law.

13:08:18  4          But I'm happy to address specifically why they

13:08:22  5    say conciliation confidentiality applies here and why that

13:08:26  6    doesn't -- that doesn't make any sense.  So in the first

13:08:29  7    instance, one of the issues is the engagement letter we

13:08:32  8    believe has a choice of law provision, may have a forum

13:08:36  9    selection provision and what those say and what law those

13:08:41  10   parties thought applied is important.  But I'd also remind

13:08:44  11   the Court that this engagement letter is not with Orpea, the

13:08:50  12   debtors.  This is an engagement between creditors and their

13:08:54  13   advisor.  So they say, for example, that there are fees that

13:09:01  14   the creditor would pay to their advisor and those shouldn't

13:09:04  15   be disclosed because of a rule that prohibits the disclosure

13:09:06  16   of fees to be paid by the debtor.  But that doesn't make

13:09:09  17   sense because the debtor, as far as we know, wasn't a party

13:09:12  18   to this engagement letter and should not have been.  Had it

13:09:15  19   been otherwise, there would fundamentally be an issue if the

13:09:19  20   debtor is determining who its counter-party is going to

13:09:23  21   retain.  Right?

13:09:24  22         The other thing is if the conciliation

13:09:27  23   confidentiality, even if we were to credit what PJT says the

13:09:33  24   way the rule should be applied, that it's this absolute,

13:09:35  25   then PJT company never have had confidential information

13:09:39 1   before executing its engagement letter, because doing so

13:09:43 2   would have been a breach of conciliation confidentiality,

13:09:46 3   and that would have been, as our expert has explained, a

13:09:49 4   waiver or no confidential information could have gone to PJT

13:09:53 5   and ended up in its letter.

13:09:55 6       And I would just say they also flagged this

13:09:58 7   issue, that the engagement letter refers to a lockup

13:10:01 8   agreement.  That lockup agreement has been publicly

13:10:04 9   disclosed.  And in fact, as you can learn from a Google

13:10:08 10  search, is available to any creditor if they e-mail someone

13:10:13 11  at Crol.  So the fact that there's a reference to a lockup

13:10:16 12  is not confidential information, it is something that has

13:10:20 13  been very widely publicly disclosed.

13:10:22 14      At the end of the day, given the fact that the

13:10:30 15  document was marked privileged and confidential is not, as

13:10:35 16  many courts in the U.S. have held in lots of different

17  contexts, indicative of whether the document is, in fact, to

13:10:43 18  be treated as privileged or confidential, what is

13:10:46 19  interesting here is that PJT does not say they marked this

13:10:48 20  document confidential pursuant to conciliation

13:10:51 21  confidentiality or conciliation privilege such as one might

13:10:55 22  do in the context of a settlement communication.  They

13:10:58 23  simply say it was marked privileged and confidential.  And

13:11:02 24  without knowing whether they do that in the ordinary course,

13:11:05 25  whether they do that to all documents that they prefer not

13:11:08  1    to be disclosed doesn't argue against disclosure here,

13:11:12  2    because the standard here too is discoverability, not

13:11:16  3    admissibility.

13:11:18  4             THE COURT:  Okay.  I understand your point and

13:11:21  5    now I'm remembering our prior hearing where I think you went

13:11:24  6    round and round about this, where I think you told me one or

13:11:27  7    two hearings ago, look, when there's a battle of the

13:11:33  8    experts, the Court shouldn't weigh in.  Well, then, what is

13:11:33  9    it you're asking me to do?  Because if there's a battle of

13:11:38 10    the experts and you say not privileged, they say privileged,

13:11:38 11    I necessarily have to do something.  I either have to order

13:11:42 12    them to produce it in violation of what they say is

13:11:46 13    privileged and order them to violate French privilege law or

13:11:50 14    I have to decide that I agree with you and it's not

13:11:53 15    privileged, so at some point I have to weigh in on some

13:11:56 16    level.  So can you help me understand how we're supposed to

13:11:57 17    move forward if I'm not supposed to weigh in?

13:11:59 18             MS. BARDAY:  Well, so I think that there are a

13:12:02 19    couple of questions.  The one is, is there actually

13:12:05 20    confidential information in the letter, confidential

13:12:08 21    information relating to the substance of negotiations in the

13:12:11 22    context of the conciliation.  And we would not object, Your

13:12:14 23    Honor, to an in camera review to determine whether or not

13:12:17 24    that's the case.  Right?

13:12:18 25             But there also is this secondary issue of a

13:12:22  1    forum selection provision.  We believe it's in this

13:12:25  2    engagement letter that may very well designate another court

13:12:29  3    to determine what the substance is of any disputes under the

13:12:33  4    agreement.  And this conciliation confidentiality --

13:12:37  5              THE COURT:  Hold on one second before you move

13:12:39  6    forward.

13:12:39  7              MS. BARDAY:  Yes.

13:12:40  8              THE COURT:  Let's say there is a choice of law

13:12:42  9    provision.  This is -- what I imagine that I will hear from

13:12:45 10    respondents is, so what, this document was created for -- to

13:12:50 11    aid in the French conciliation proceeding, and therefore, no

13:12:55 12    matter what it says, it's going to fall within that

13:12:58 13    privilege.  What does the choice of law provision get us?

13:13:01 14              MS. BARDAY:  So I think -- I think it gets us

13:13:04 15    two things.  So the first thing is the fact that something

13:13:08 16    was created around a conciliation -- so, for example, the

13:13:12 17    fact that a lawyer is retained for a mediation, right, it's

13:13:18 18    not confidential unless there's some confidential

13:13:20 19    information otherwise contained in the document.  So the

13:13:23 20    fact that this advisor was retained to provide advice during

13:13:26 21    conciliation doesn't render every single thing the advisor

13:13:31 22    did, lessors and so on, confidential, right?

13:13:34 23              But this is an engagement letter.  It's been

13:13:37 24    produced by an American entity.  Right?  So if an American

13:13:41 25    entity decided that it wanted New York law or Delaware law

13:13:45  1    to govern a contract entered into involving that entity,

13:13:51  2    certainly it could do that and the fact that there's some

13:13:54  3    conciliation going on somewhere in France isn't going to

13:13:57  4    override that, but the fact that this conciliation

13:13:59  5    privilege, as they say, is so important, the fact that if

13:14:03  6    the letter, in fact, does not reference it but does, in

13:14:06  7    fact, choose some other law is a very strong indication that

13:14:09  8    they did not intend for conciliation confidentiality to be

13:14:14  9    the governing law otherwise they would have French law in a

13:14:19 10    French forum.

13:14:20 11          THE COURT:  Okay.  I think I understand the

13:14:22 12    point that you're making.

13:14:27 13          Is there anything else you'd like to say?

13:14:31 14          MS. BARDAY:  One second, Your Honor, let me just

13:14:38 15    run through my notes quickly.

13:14:40 16          THE COURT:  Take your time.

13:14:47 17          MS. BARDAY:  So I guess the last point, which I

13:14:49 18    briefly alluded to earlier, but is that, you know, no one

13:14:53 19    has said that Orpea, the debtor, was involved in negotiating

13:14:59 20    or signing onto this agreement or that any of the substance

13:15:03 21    of what is disclosed in this agreement is a product of

13:15:07 22    information from Orpea or of Orpea other than to say that

13:15:11 23    PJT was retained to assist with conciliation in a lockup

13:15:16 24    agreement, which the lockup agreement has been publicly

13:15:19 25    disclosed, so there is no confidentiality around that.

13:15:22 1          And I think, you know, as our expert has said

13:15:26 2    and I think context dictates, in the context of settlement

13:15:31 3    or mediation confidentiality too, the confidentiality

13:15:36 4    attaches to things relating to the mediation or the

13:15:41 5    conciliation itself and that is negotiations with the

13:15:45 6    debtor.  And so in a situation where, you know, PJT, adverse

13:15:50 7    until the engagement letter also signed, right, to its

13:15:54 8    potential client, the idea that that has some

13:15:58 9    confidentiality information of the debtor, if it is a breach

13:16:01 10   of the confidentiality, the document ought to be produced,

13:16:02 11   certainly is discoverable because at issue here is the scope

13:16:06 12   of PJT's engagement, including who their clients were and

13:16:12 13   what they did.

13:16:13 14          THE COURT:  What information do you have about

13:16:14 15   the letter right now?  Do you know who signed it, who it's

13:16:22 16   between, whatever was sent to someone, whatever was

13:16:25 17   disclosed to anyone?  Do you have any of that information?

13:16:29 18          MS. BARDAY:  No, only what's disclosed in the

13:16:32 19   court filing.

13:16:33 20          THE COURT:  Okay.  Remind me, please, who is

13:16:35 21   speaking on behalf of respondents.

         22          MS. EKONO:  Hi, Your Honor.  This is Keh Ekono

13:16:42 23   from Willke, Farr & Gallagher.  Good afternoon.

13:16:44 24          THE COURT:  Good afternoon.  What's the proposed

13:16:47 25   path forward here?

13:16:49  1            MS. EKONO:  Could you repeat that question?

13:16:50  2      What's the proposed --

13:16:50  3            THE COURT:  Path forward.

13:16:54  4            MS. EKONO:  I think our perspective of the issue

13:16:57  5      is quite narrow because this is a discovery dispute that is

13:17:00  6      necessarily limited to the subpoenas that the Court

13:17:03  7      authorized earlier this year.  So the only question before

13:17:06  8      the Court, despite what petitioners have just described, is

13:17:10  9      whether the PJT engagement letter is responsive.  And to

13:17:14 10      that question, I think Your Honor was spot on.  It isn't.

13:17:17 11      There's an exclusion for any documents that were created

13:17:20 12      when there was an active conciliation procedure.

13:17:23 13            Now the separate issue that petitioners are

13:17:25 14      raising is whether or not they should be allowed to modify

13:17:29 15      the subpoena.  And as to that issue, I think our position is

13:17:33 16      that Your Honor has not authorized them to take discovery of

13:17:40 17      that issue or to even have access to the engagement letter.

13:17:43 18      So before we can even get to that point, petitioners need to

13:17:47 19      file an application of some sort addressing the 1782

13:17:51 20      requirement as well as the *Intel* factors, and specifically

13:17:54 21      address why they are entitled to the engagement letter.  And

13:17:59 22      that includes, I believe, the "for use" factor, which I

13:18:03 23      think it sort of percolates in a different way than it did

13:18:06 24      when we were briefing this issue last year, so the issue of

13:18:10 25      how they're going to use this.  They talk very vaguely about

13:18:13  1    they want to pursue a theory that PJT made

13:18:18  2    misrepresentations, putting aside the merits of that, what

13:18:21  3    they have not done for the Court is specifically explain

13:18:26  4    which collateral attack proceedings are still pending in

13:18:30  5    France and what the actual issues presented are before those

13:18:35  6    courts.  I think it's important for the Court to recognize

13:18:39  7    that in none of those actions is PJT a party.  So I am very

13:18:43  8    interested to hear from them why this particular engagement

13:18:46  9    letter is, in fact, relevant and would be for use.

13:18:49 10          And as Your Honor has somewhat considered

13:18:52 11    before, we continue to have, I think, a very strong argument

13:18:56 12    that because this document is protected by the conciliation

13:19:00 13    privilege, there's no possibility that it can be used.  I

13:19:03 14    know when we previously talked about this it was framed as

13:19:06 15    an admissibility issue, but I think respondents would very

13:19:10 16    much like the opportunity to explain to Your Honor why that

13:19:13 17    framework might not be tenable for the situation here,

13:19:16 18    including because there are cases, one of which is cited in

13:19:20 19    Professor Dammann's second declaration, which talk about a

13:19:24 20    very analogous situation.  So a party trying to attain

13:19:29 21    information that's covered by the conciliation privilege for

13:19:32 22    the sole purpose of demonstrating that one of the parties

13:19:34 23    involved in the conciliation engaged in bad faith.  And the

13:19:38 24    Court, in response, said no, we're not lifting the

13:19:41 25    conciliation privilege so they can have access to that

1    information.  I think that's very analogous here.  And

13:19:45  2    that's the 2015 *Cour de cassation* decision that's referenced

13:19:49  3    a number of times in Professor Dammann's declaration.

13:19:54  4            And the other point on the 1782 that I think

13:19:57  5    we'd have to brief and put forward our arguments on with

13:20:01  6    respect to the engagement letter is the Intel III factor.

13:20:04  7    Again, as we've asserted, this document is covered by the

13:20:07  8    French conciliation privilege.  And so from our perspective

13:20:12  9    it is a complete end around from the French privilege for

13:20:16 10    them to be seeking to obtain that document through the U.S.

13:20:20 11    court.

13:20:20 12            THE COURT:  Okay.  Thanks very much, Ms. Ekono.

13:20:24 13    Ms. Barday, why is Ms. Ekone's proposed path incorrect?  Why

13:20:29 14    is that not the best answer, let you file another

13:20:33 15    application, justify to the Court whether the Intel and the

13:20:35 16    statutory factors are satisfied, let respondents have a

13:20:40 17    chance to tell me why they're not and then figure it out

13:20:44 18    that way?

13:20:44 19            MS. BARDAY:  Sure.  So, Your Honor, the answer

13:20:48 20    is because this document was requested in our very first

13:20:51 21    petition and all of those factors were addressed in our

13:20:56 22    original petition.

13:20:56 23            THE COURT:  Ms. Barday, hold on one second.  It

13:20:58 24    may have been, but then I modified the subpoena to carve out

13:21:03 25    any document created during the conciliation.  So as

13:21:03  1    modified, this document is no longer part of your subpoena,

13:21:06  2    correct, because it was created during the conciliation

13:21:09  3    proceeding, correct?

13:21:10  4         MS. BARDAY:  So it actually still is, I believe,

13:21:12  5    a document request in the subpoena, but I understand the

13:21:16  6    point that given the date range modifications, it falls,

13:21:20  7    even though it is specifically requested by name, outside of

13:21:23  8    the date range.

13:21:24  9         THE COURT:  Correct.  So now carved out, so why

13:21:29 10    is it not the best path to have you file an application to

13:21:34 11    serve a subpoena that targets this document specifically?

13:21:37 12         MS. BARDAY:  Well, so Your Honor, certainly we

13:21:40 13    could go that route.  I do worry a little bit that this is

13:21:43 14    just a delay tactic.  I want to be clear that we haven't

13:21:46 15    seen a single document in this case yet even though this

13:21:49 16    case has been going on for I think about a year now.  I

13:21:54 17    don't know that the briefing, you know, would be more

13:21:57 18    instructive than what Your Honor has already seen, but

13:22:02 19    certainly it can be.  I do want to point out, Dammann's

13:22:06 20    declaration that was submitted really was a brief.  It

13:22:09 21    really wasn't just a declaration.  We took to heart the

13:22:11 22    three-page limitation on letters to the Court and certainly

13:22:14 23    would welcome an opportunity to provide a fulsome response

13:22:19 24    to that document.  But you know, at the end of the day, what

13:22:22 25    the respondents haven't addressed, have not even spoken

13:22:26  1    about is the fact that there is an -- and I'm not sure a

13:22:31  2    second petition is going to solve this problem.  There is, I

13:22:34  3    think, a forum selection provision and a choice of law

13:22:37  4    provision in that engagement letter and there is not a

13:22:41  5    single case they have submitted where a French court

13:22:44  6    rejected, rejected a request to provide that information.

13:22:49  7    The cases they cite didn't deal with an engagement letter.

13:22:54  8    An engagement letter just isn't privileged under these

13:22:57  9    circumstances.  And again, if they believe that there is

13:22:59 10    confidential information in there, we would invite Your

13:23:02 11    Honor to do an in camera review, look at the document and

13:23:05 12    determine for yourself, but at the end of the day if that

13:23:10 13    document is not governed by French law, conciliation

13:23:13 14    confidentiality doesn't have anything to do with the

13:23:13 15    proceeding and so a subsequent petition is just a way to

13:23:19 16    further stall.

13:23:20 17          THE COURT:  All right.  Look.  I appreciate the

13:23:22 18    point that you're making that respondents didn't cite a case

13:23:24 19    where a French court declined, but did you cite a case for

13:23:28 20    me where a French court ordered production in a circumstance

13:23:31 21    like this?

13:23:32 22          MS. BARDAY:  So we did not, although we have a

13:23:36 23    battle of the experts.  Our expert says this is not

13:23:40 24    privileged, this is not confidential.  Their expert says

13:23:44 25    it's confidential and there is no case compelling,

13:23:47  1    compelling the outcome.  And in those circumstances, the

13:23:50  2    case law says you defer to production.  And again, the

13:23:55  3    test -- just on the for use standard, the for use does not

13:23:59  4    mean that I'm going to take this document and submit it to a

13:24:02  5    court in France.  The for use means that my clients can gain

13:24:06  6    some advantage by reviewing the document and that's why the

13:24:09  7    test for 1782 is discoverability, not admissibility.  And so

13:24:13  8    it is not our burden to identify specific cases in which we

13:24:17  9    would seek to submit it.  There's no question that there are

13:24:21 10    foreign proceedings pending in connection with which the

13:24:24 11    1782 application is proper and nothing more is required on

13:24:28 12    that front.

13:24:30 13         THE COURT:  Look, I understand the point that

13:24:32 14    you're making on for use.  I merely wanted to know whether

13:24:35 15    you had cited something that you called respondents out for

13:24:38 16    not citing in the negative.

13:24:39 17         Look, the last time that we talked, I said if

13:24:42 18    you want to come back and you really want me to make a call

13:24:45 19    on privilege, I need two things.  I need to know, because

13:24:48 20    nobody could tell me the last time, which jurisdiction's law

13:24:52 21    governs the determination of privilege.  Like if it's a

13:24:55 22    U.S.-based subpoena, am I looking to U.S. privilege law or

13:24:59 23    am I confined to French privilege law and who carries the

13:25:02 24    burden here?

13:25:03 25         So here's what we're going to do.

13:25:05  1    Your motion is denied, as I understand it, which

13:25:10  2    is, is the request responsive under the subpoena.  It is

13:25:12  3    not.  I modified the subpoena, so it's clearly not

13:25:14  4    responsive anymore given the excluded dates.  If you want to

13:25:18  5    file an application to serve a subpoena where your request

13:25:23  6    would be responsive, go ahead and do that.  And then what

13:25:26  7    I'd ask of both of you is, when it's time, at the

13:25:28  8    appropriate in your briefing about why the application

13:25:31  9    should or should not be granted, I'd like to hear

13:25:33 10    definitively, the best you can, which jurisdiction's law

13:25:36 11    actually governs the determination of a U.S.-based subpoena

13:25:40 12    that deals with foreign jurisdiction's privilege in a case

13:25:43 13    like this and whose burden it is to show me whether the

13:25:46 14    privilege exists or doesn't.  Is that clear?

13:25:48 15    MS. BARDAY:  Thank you, Your Honor.  Just one

13:25:51 16    clarifying question, if I may.  In order to answer that

13:25:53 17    question, we'd need to know whether there's a choice of law

13:25:56 18    provision in the engagement letter, and if so, what law it

13:25:59 19    selects and the scope of what it is intended to cover.

13:26:04 20    MS. EKONO:  Your Honor, can I address that

         21    issue, please?

13:26:08 22    THE COURT:  Go ahead.

13:26:08 23    MS. EKONO:  Okay.  So with respect to the choice

13:26:09 24    of law, we contend that that is totally irrelevant

13:26:10 25    information to a privilege analysis.  And the reason for

13:26:13  1    that is this.  Delaware has law about what happens when a

13:26:17  2    party seeks is to invoke a foreign privilege.  And I'll

13:26:20  3    refer you to the *Tulip Computers* case and *Veleron* case that

13:26:23  4    were cited in our submission.  And what those cases clearly

13:26:27  5    explain is that communications that relate to activity in a

13:26:30  6    foreign country are governed by that country's privilege

13:26:33  7    law.  And this is also under what's called the "touch

13:26:36  8    point"(sic) test.  The analysis here is very simple which

13:26:40  9    law applies.  French law.  Why?  Because we have a French

13:26:44 10    debtor who had a French conciliation proceeding, where

13:26:47 11    parties thought they were invoke the French conciliation

13:26:50 12    privilege and petitioners are intending to use these

13:26:53 13    documents in ongoing proceedings in France.  So the French

13:26:56 14    law applies to the French conciliation privilege.  The

13:26:59 15    choice of law is totally beside the point.

13:27:02 16            In addition, in our declaration from Mr. Did you

13:27:05 17    month, he explains in there he was able to review the

13:27:08 18    document in full.  And he explains that because of the

13:27:11 19    robustness of the conciliation privilege, there is no

13:27:15 20    abilities for parties to contract around it, which seems to

13:27:21 21    be the underlying theory behind petitioners that there's a

13:27:23 22    choice of law provision.  Even if there were a choice of law

13:27:25 23    provision, it would have no effect on what document is

13:27:28 24    covered by the conciliation privilege and he explains that I

13:27:31 25    think very clearly in this declaration.

13:27:34  1          And then finally I'll just note, Your Honor,

13:27:37  2     petitioner cites two cases, *Vichi* and *Redick*, in their

13:27:40  3     submission for the proposition that a choice of law could be

13:27:43  4     potentially relevant.  I just want to say that those case

13:27:47  5     are theoretically inapposite.  They're not 1782 cases.  They

13:27:50  6     don't even involve a privilege dispute.  And more

13:27:53  7     importantly, in both of those cases the Court didn't even

13:27:55  8     apply the choice of law provision that they are arguing over

13:27:59  9     in those matters.  In both cases the Court found that the

13:28:02 10     choice of law provision should not be applicable.

13:28:04 11          Happy to answer any other questions on that

13:28:07 12     issue, but I think our position is clear.  We don't think it

13:28:11 13     matters either way whether there is a choice of law

13:28:14 14     provision.

13:28:14 15          THE COURT:  Understood.  I don't have any more

         16     questions on this point.

13:28:15 17          And Ms Barday, certainly in your application,

13:28:17 18     you should feel free to explain to me why choice of law does

13:28:20 19     matter and cite whatever cases in authority you can find on

13:28:22 20     that part and I'm sure Ms. Ekono will respond accordingly.

13:28:26 21          All right, folks.  If there's nothing else,

13:28:28 22     thanks very much for your argument.  Have a nice day.

13:28:34 23          (Court adjourned at 1:28 p.m.)

         24

         25          ---------------------------------

1

2
                I hereby certify the foregoing is a true and
3       accurate transcript from my stenographic notes in the
        proceedings.
4

5                              /s/ Stacy M. Ingram, RPR
                               Official Court Reporter
6                                U.S. District Court

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25